UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

CONNIE L. DERSHAM,

        Plaintiff,

            v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

_____/

Civil Action No. 14-13675
Honorable John Corbett O'Meara
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 15, 16]

Plaintiff Connie L. Dersham appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's ("ALJ") decision is not supported by substantial evidence, and thus **RECOMMENDS** that:

- Dersham's motion for summary judgment [R. 15] be **GRANTED**;

- The Commissioner's motion [R. 16] be **DENIED**; and

- the Commissioner's decision be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further consideration consistent with this Report and Recommendation.

## I.    BACKGROUND

### A.    Dersham's Background and Disability Application

Dersham filed her application for DIB on February 29, 2011, alleging a disability onset date of November 1, 2006 and claiming disability due to fibromyalgia, diabetes, asthma, depression, anxiety, shingles, anxiety disorder, and irritable bowel syndrome.  [R. 13-6, Tr. 98, 116].  Born in November 1956, Dersham was 51 years old on September 30, 2008, her date last insured.  [*Id.*; R. 13-2, Tr. 20].  She last worked as a clerk in an art gallery in December 2006.  [R. 13-6, Tr. 155].

After her application was denied initially and on reconsideration, Dersham requested a hearing, which took place on April 22, 2013 and included the testimony of Dersham and a vocational expert ("VE").  [R. 13-2, Tr. 9, 27-61].  In a May 23, 2013 written decision, the ALJ found Dersham to be not disabled.  [*Id.*, Tr. 9-22].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Dersham timely filed for judicial review.  [*Id.*, Tr. 1-3; R. 1].

2

**B.     The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age,

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Dersham was not disabled. At the first step, she found that Dersham had not engaged in substantial gainful activity from her alleged onset date to her date last insured. [R. 13-2, Tr. 11]. At the second step, she found that Dersham had the severe impairments of asthma, fibromyalgia, degenerative disc disease, diabetes mellitus, and obesity. [*Id.*, Tr. 11-12]. Next, the ALJ concluded that none of Dersham's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 13-14].

Between steps three and four, the ALJ found that Dersham had the RFC to perform light work[2] except she "may frequently climb ramps/stairs; frequently balance, kneel, crouch, or crawl; and occasionally climb ladders,

---

[2] "Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job in this category either requires a good deal of walking or standing, or, when it involves sitting most of the time, it requires quite a bit of pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

ropes, or scaffolds.  She must avoid concentrated exposure to extreme cold, wetness, humidity and workplace hazards … [and] must avoid even moderate exposure to fumes/odors/dusts/gases/poor ventilation."  [R. 13-2, Tr. 15].  At step four, the ALJ found that Dersham had no past relevant work.  [*Id.*, Tr. 20].  After considering Dersham's age, education, RFC, and the testimony of the VE, the ALJ determined at step five that there are jobs that exist in significant numbers that Dersham can perform, including the occupations of ticket seller, mail clerk and laundry folder.  [*Id.*, Tr. 21].

## II.  ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741

6

F.3d at 729.

Dersham argues that the ALJ failed to properly consider the treating physician's opinion, and that substantial evidence does not support the RFC determination.  The Court agrees.

## A.

In formulating Dersham's RFC, the ALJ gave greater weight to the physical RFC assessment of Shanti Tanna, M.D., the state agency non-examining physician, than to the opinions of David Vallance, M.D., a rheumatologist and Dersham's treating physician.  This decision was contrary to the cardinal rule regarding the weight given to medical opinions, and not supported by the facts of this case.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's condition when that opinion is well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific

7

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

"Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.  This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242–43 (internal quotation marks and citation omitted). The Court will "not hesitate to remand" when an ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks and citation omitted).

Pertinent to this case, the treating physician rule is predicated on the detailed, longitudinal picture and unique perspective that such sources provide:

> 'Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'

*Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).  For these reasons, a treating physician's opinion is entitled to great deference in all cases.  *Gentry*, 741 F.3d at 723.

Dr. Vallance had treated Dersham regularly since 2007.  [R. 13-8, Tr. 234-349; R. 13-11, Tr. 577-605].  In a May 4, 2012 questionnaire, he opined that prior to the date last insured, Dersham had severe fibromyalgia and moderate inflammatory arthritis that caused "widespread pain, chronic fatigue, cognitive difficulties (concentration, memory), [and] joint impairment." [R. 13-11, Tr. 572-73].  Based on those conditions, he opined that Dersham could not sit or stand for greater than 10 minutes without repositioning, could not lift more than 10 pounds, and could not engage in repetitive motions.

9

[*Id.*].

In a medical assessment form regarding the ability to do work-related activities, Dr. Vallance further opined that due to pain, fatigue and joint impairment, Dersham could stand or walk for one hour in an eight-hour workday and for 20 minutes without interruption, sit for six hours and for 30 minutes without interruption, grasp, turn or twist objects for one hour, use fine manipulation for less than one hour, and reach for less than one hour in a workday; she could never twist, crouch/squat/climb ladders or stairs; could rarely look down, look up or turn her head; and she would need to take unscheduled breaks every 20 to 30 minutes and a total of one to two hours of rest out of an eight-hour workday.  [*Id.*, Tr. 574-76].

The ALJ failed to give Dr. Vallance's opinion controlling weight, assigning it "less weight" upon finding that the objective medical evidence and Dersham's daily activities contradicted his conclusions.  [R. 13-2, Tr. 19]. Instead, contrary to the rule favoring opinions of treating physicians, the ALJ assigned "great weight" to Dr. Tanna's RFC assessment of light work with environmental limitations.  [*Id.*, Tr. 18; 13-3, Tr. 68-70].

In appropriate circumstances, the opinion of a state agency medical consultant may be entitled to greater weight than the opinion of a claimant's

10

treating physician.  Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  "One such circumstance may occur, for example, when the 'State agency medical ... consultant's opinion is based on a review of a complete case record that ... provides more detailed and comprehensive information than what was available to the individual's treating source.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96-6p, 1996 WL 374180, at *3).  Here, Dr. Vanna's opinion was not based on a review of the complete case record, and the ALJ failed to give good reasons for not giving controlling weight to Dr. Vallance's opinion.

In *Blakley*, the Sixth Circuit found that an ALJ erred in giving greater weight to a state agency physician than treating sources, where the agency physician did not review certain records from the treating sources, including an assessment, restrictions, and other treatment notes.  581 F.3d at 409.  In doing so, the Court held that "because much of the … medical evidence [the state agency consultant did not review] reflects ongoing treatment and notes by Blakley's treating sources, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record."  *Id.* (citations and internal quotation marks omitted).

11

Dr. Tanna did not have an opportunity to review the two forms Dr.

Vallance completed regarding Dersham's conditions, symptoms and ability

to do work-related activities.  [R. 13-11, Tr. 572-76].  As in *Blakley*, there is

no indication that the ALJ "at least considered" that Dr. Tanna's opinion was

not based on a review of the complete record.  581 F.3d at 409.

The Commissioner argues that it is irrelevant that Dr. Tanna did not

review Dr. Vallance's opinions because it is the Commissioner's function to

resolve conflicts in medical evidence.  [R. 16, PgID 736-38].  However, in

resolving such conflicts, the ALJ cannot disregard the preference for

opinions from treating physicians, and in light of the holding of *Blakley,*

cannot give greater weight to a reviewing consultant who has not reviewed

the complete record.

**B.**

Further, contrary to the Commissioner's argument, the opinion of Dr.

Vallance was relevant evidence for the state agency physician to consider.

This is especially true here because fibromyalgia is a condition that

"present[s] no objectively alarming signs."  *Rogers*, 486 F.3d at 243-44; *see*

*also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.

1988) (noting that objective tests are of little relevance in determining the

existence or severity of fibromyalgia, as people with fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion"); *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003) ("[f]ibromyalgia is an 'elusive' and 'mysterious' disease" that causes "severe musculoskeletal pain").

For the same reason, the ALJ's reliance on the lack of objective medical evidence as a basis for giving less than controlling weight to Dr. Vallance's opinion is without merit. The ALJ acknowledged that Dr. Vallance "diagnosed [Dersham] with fibromyalgia and the record contains the appropriate evidence of tender points or other clinical findings" to support the diagnosis. [R. 13-2, Tr. 12]. She noted that "fibromyalgia … often [presents] with an absence of abnormal diagnostic findings and laboratory tests." [*Id.*, Tr. 14]. Nonetheless, the ALJ repeatedly noted that Dersham's physical and neurovascular examinations were "normal," "essentially normal," "essentially unremarkable," etc. [*Id.*, Tr. 16-18]. She justified giving less weight to Dr. Vallance's opinions by finding that the limitations he assessed were "out of proportion with the … objective and diagnostic testing" and "the physical examinations were consistently within normal limits." [*Id.*, Tr. 19]. The ALJ's reliance on the absence of objective medical evidence is not only

13

inconsistent with her own understanding of fibromyalgia, but also with legal precedent.  *See Rogers*, 486 F.3d at 245 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant") (citing *Preston*, 854 F.2d at 820).

Moreover, the ALJ failed to mention, much less consider, that Dr. Vallance is a rheumatologist, "and thus a specialist in the particular types of conditions [Dersham] claims to suffer from."  *Rogers*, 486 F.3d at 245.  The ALJ did not give sufficient consideration of the longstanding treatment relationship that Dersham had with Dr. Vallance, and she showed a disregard for the longitudinal picture of Dersham's impairments and unique perspective that Dr. Valance brought that could not be gleaned from a review of the medical records alone.  *Johnson,* 652 F.3d at 651; § 404.1527(d)(2).

For these reasons, the ALJ's treatment of Dr. Vallance's opinion violated the treating physician rule.

## C.

On a final note, the ALJ claimed to rely in part on Dersham's activities of daily living as reported by Dersham's husband, Keith Dersham, to give less than controlling weight to Dr. Vallance's opinion, and he gave Mr.

14

Dersham's report some weight.  [R. 13-2, Tr. 19-20].  Yet, even as described by the ALJ, Mr. Dersham reported that Dersham is able to wash the dishes only 50 percent of the time; do laundry only about 25 percent of the time; can walk only about a quarter mile before having to rest;[3] has difficulty with lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing; and has problems with memory, completing tasks, concentration, understanding and following rules.  [*Id.*, Tr. 20, (citing 13-6, Tr. 144-51)].  Mr. Dersham wrote that his wife's "mobility is severely constrained."  [R. 13-6, Tr. 144].  These reports are generally consistent with Dr. Vallance's opinion, and do not provide good reason to give his opinion less than controlling weight.

Moreover, Mr. Dersham's reports undermine the ALJ's assessment of Dersham's RFC; they are directly contrary to the ALJ's conclusion that she is capable of the lifting, good deal of walking, pushing or pulling required for light work, or the frequent ramp and stair climbing, balancing, kneeling, crouching or crawling.  [R. 13-2, Tr. 15].

***

The ALJ failed to articulate good reasons for giving less than controlling weight to Dr. Vallance's opinion and failed to consider that Dr.

---

[3] At a slow pace of 20 minutes per mile, a quarter mile walk would take about 5 minutes.

Tanna did not review the complete record.  Since neither Dr. Vallance nor

Mr. Dersham provide support for the ALJ's assessment of Dersham's RFC,

and since Dr. Tanna's opinion was rendered without complete information,

substantial evidence does not support the RFC.  Thus, the Court

recommends remanding the decision for further consideration.

Although the Court will not address Dersham's remaining arguments, it

does recommend that, on remand, the ALJ should evaluate whether

additional manipulative restrictions should be imposed to address Dersham's

alleged left shoulder impairment.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the

Commissioner's motion for summary judgment [R. 16] be **DENIED**,

Dersham's motion [R. 15] be **GRANTED**, and the Commissioner's decision

be **REMANDED** for further proceedings pursuant to sentence four of 42

U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 16, 2016

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in**

17

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2016.

s/Marlena Williams_____
MARLENA WILLIAMS
Case Manager

18